

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable T. M. Trimble
First Assistant
State Superintendent of Public Instruction
Austin, Texas

Dear Sir:

Opinion No. O-5749
Re: What is the status of an independent
school district regarding the taxing
of royalties on oil well properties
in annexed districts?

You request the opinion of this department upon the
question presented in the letter of Mr. F. W. Townsend, Superin-
tendent of the Mirando City Schools, read as follows:

"Some time past Mr. Elmore H. Borchers, Webb County
Superintendent, informed you that the Common School District
#25 had been annexed to the Mirando Independent School Dis-
trict. He also informed you that we planned a visit to your
office in the near future. We now find it very difficult
to make this trip and wonder if we might have the desired
information by correspondence.

"The annexed territory contains considerable oil
properties, of varying degrees of production. All real
estate is owned by four non-resident owners, some of whom
have sold parts of royalties. What is the status of an
independent district regarding the taxing of these royalties
— there appears to be considerable conflicting decisions
and opinions in the law books?

"Does real estate have to be assessed at the same
percentage of true market value as that of highly specula-
tive oil properties?

"Is a well, brought into production since January 1,
1944, taxable for 1944 taxes? If so, at what date during
1944 is it advisable to cease assessing new wells?"

MMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable T. M. Trimble, page 2

Condensed, the question presented is:

"What is the status of mineral interest insofar as subjectivity to ad valorem taxes is concerned of property located within Common School District No. 25, annexed to the Mirando City Independent School District?"

That the mineral interests may be severed from the surface of land and constitute taxable property in the hands of the owner thereof has long been the settled law of this State. Sheffield v. Hogg, 80 S. W. (2d) 741; Texas Company v. Daugherty, 176 S. W. 717; Stevens County v. Mid-Kansas Oil & Gas Co., 254 S. W. 290; and State v. Quintana Petroleum Co., 133 S. W. (2d) 112.

From the last cited case, State v. Quintana Petroleum Co., supra, we find three common mineral interests considered, and the law applied as to their taxability as an interest in land. They are as follows:

(1) The usual one-eighth royalty (may be more or less, according to contract) reserved by the lessor;

(2) The seven-eighth working interest (may be more or less, according to contract) passing to the lessee;

(3) Oil payments, if provided for, paid out of the working interest passing to the lessee.

Under the express holding in this case by Judge Smedley all of these constitute an interest in land, subject to ad valorem taxes.

Neither the Constitution, the statutes, nor judicial determination has attempted to lay down any inflexible rules as to the pertinent factors in the determination of "true and full value" for purposes of taxation. Section 1 of Article VIII of the Constitution of Texas is in part as follows:

"Taxation shall be equal and uniform. All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law. . . ."

Article VIII, Section 20, reads in part as follows:

Honorable T. M. Trimble, page 3

"No property of any kind in this State shall ever be assessed for ad valorem taxes at a greater value than its fair cash market value nor shall any Board of Equalization of any government or political subdivision or taxing district within this State fix the value of any property for tax purposes at more than its fair cash market value; . . ."

Article 2792a reads as follows:

"No property shall be assessed for taxes at a valuation greater than its fair market value, and if there is no market value, then no greater than its intrinsic value."

Article 7174, R. C. S., provides in part as follows:

"Each separate parcel of real property shall be valued at its true and full value in money, excluding the value of crops growing or ungathered thereon.

"In determining the true and full value of real and personal property the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation, nor shall he adopt as a criterion of value the price for which such property would sell at auction or a forced sale or in the aggregate with all the property in this county; but he shall value each tract or lot by itself, and at such sum and price as he believes the same to be fairly worth in money at the time such assessment is made. . . ."

Article 7149, R. C. S., is as follows:

"The term, 'true and full value,' wherever used shall be held to mean the fair market value, in cash, at the place where the property to which the term is applied shall be at the time of assessment, being the price which could be obtained therefor at private sale, and not at forced or auction sale."

It is observed from an examination of these constitutional and statutory provisions that the terms "market value", "cash market value", and "true and full value in money", are used, and the rule is laid down in 40 Tex. Jur. 150, that these terms are held to be synonymous.

681

679

Honorable T. M. Trimble, page 4

You are therefore advised that all real estate, or any interest therein, is to be assessed against the owner or owners at a valuation not greater than its fair cash market value. It is immaterial whether the interest is in the land, including both surface and minerals, or in either the surface or minerals. What is the "fair cash market value" of a particular tract of land or any particular interest therein at a given time is always a question of fact to be determined from all the facts and circumstances pertaining thereto.

We trust that the foregoing is sufficient to make it clear that a mineral interest in land, whether it be in the nature of a royalty, oil payment or the working interest, is subject to ad valorem taxes by the owner. Taxes are assessed and paid upon the valuation as of January 1 of the year for which the assessment is made if done by the County Assessor-Collector, or as of the date fixed by the Board of Trustees of an independent school district, if the district assesses and collects its own taxes.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

L. P. Lollar
Assistant

LPL:AMM

APPROVED AUG 16, 1944

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN